Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

EDUARDO GORDON,

               **Plaintiff,**

               **v.**

NICE SYSTEMS, INC., *et al.*,

               **Defendants.**

**Civil Action No. 18-2168 (ES) (CLW)**

**OPINION**

SALAS, DISTRICT JUDGE

    Before the Court is defendants Nice Systems, Inc. and Nice Systems Latin America, Inc.'s ("Defendants") motion to dismiss plaintiff Eduardo Gordon's ("Plaintiff") second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. No. 42).[1] Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). As set forth below, the Court GRANTS-IN-PART and DENIES-IN-PART Defendants' motion to dismiss.

## I.    Background

    Plaintiff brings this action to recover compensation allegedly owed to him for consulting work Plaintiff performed for Defendants in 2011. The Court will "set out facts as they appear in the Complaint." *See Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012).

    Defendants are an enterprise software solutions company operating and doing business in

---

[1]    Plaintiff filed his initial complaint on December 28, 2017, in state court, and Defendants removed the case to this Court on February 15, 2018. (D.E. No. 1). Defendants moved to dismiss the original complaint, and the Court denied that motion without prejudice, requiring the parties to further brief certain choice of law issues. (D.E. Nos. 6 & 20). Shortly thereafter, Defendants renewed their motion to dismiss. The Court granted the motion, finding that Plaintiff failed to identify the specific agreement relied upon for his claims. (D.E. No. 39). Plaintiff filed his second amended complaint on May 29, 2019, and this motion followed. (D.E. No. 40).

New Jersey.  (D.E. No. 40 ("Second Amended Complaint" or "SAC") ¶ 2).  Defendants engaged Plaintiff, a resident of Argentina, as a sales manager for Latin America.  (*Id.* ¶¶ 1 & 7).  Plaintiff alleges that he entered into a consulting agreement with the Defendants on November 16, 2009, which was later superseded by a sales incentive plan agreement effective January 1, 2011, to December 31, 2011 ("Sales Incentive Plan").  (*Id.* ¶¶ 3–4).  According to the Second Amended Complaint, Plaintiff was paid pursuant to the Sales Incentive Plan and an accompanying goal sheet.  (*Id.* ¶ 3).  Plaintiff's compensation as a sales manager was based upon several product lines, including NiceVision ("NV"), Public Safety ("PS"), and Situation Management ("SMS").  (*Id.* ¶ 7).  Plaintiff received commissions for sales and services relating to these product lines, including installation, maintenance, and training.  (*Id.*).

Plaintiff alleges that during his relationship with Defendants, he "facilitated a transaction entitled the Secure City Project for Tegucigalpa, Honduras (the "Hercules Project"), in which the Honduran Government engaged [Defendants] as a subcontractor."  (*Id.* ¶ 8).  Plaintiff alleges that the NV, PS, and SMS product lines were the only product lines involved in the sale, which also included services and maintenance for these products.  (*Id.*).  Plaintiff further alleges that he played a substantial and crucial role in the Hercules Project, performing a number of important tasks for Defendants.  (*Id.* ¶¶ 9 & 10).  Plaintiff alleges that, upon information and belief, Defendants were paid approximately $25 million in connection with the Hercules Project.  (*Id.* ¶ 14).  However, according to Plaintiff, when commissions were calculated for 2011, Plaintiff "was only paid approximately $37,000, far less than what would be due to him on a $25 million sale primarily involving the NV/PS/SMS product lines."  (*Id.* ¶ 15).

In 2011, Defendants terminated Plaintiff's consultant services.  (*Id.* ¶ 16).  However, Plaintiff made "ongoing complaints" to Defendants about his compensation for the Hercules

project.  (*Id.* ¶ 17).  Defendants responded to Plaintiff's complaints, telling him that he "was paid his commissions at a discounted rate because only 9.09% of the project consisted of the NV/PS/SMS product lines for which he was responsible."  (*Id.*).  Nevertheless, in or around 2013, Defendants informed Plaintiff that they believed there was a mistake, recalculated his commission, and paid Plaintiff an additional $37,000.  (*Id.* ¶ 18).  According to Plaintiff, Defendants later alleged that the remainder of the Hercules Project was designated as another product line referred to as "S2," which "is not defined in any document and the Billing Chart for the project does not correlate line items on the chart with any tangible product or services."  (*Id.* ¶ 19).  Thus, Plaintiff alleges that the S2 designation was improper, and that his "commission should have been calculated as though the PS, NV, and SMS products were the only components of the Hercules Project, using the Quotas and Multipliers set forth in the 2011 [g]oal [s]heet that he was provided during his tenure with [Defendants]."  (*Id.* ¶¶ 20–21).  In total, Plaintiff alleges that he is owed an additional $863,264.82 in outstanding commission payments relating to the Hercules Project and an additional $80,000 in unpaid bonuses unrelated to the Hercules Project.  (*Id.* ¶¶ 22 & 23).[2]

Based on the foregoing, Plaintiff brings claims for (i) breach of contract (Count I); (ii) breach of the implied covenant of good faith and fair dealing (Count II); (iii) conversion (Count III); and (iv) unjust enrichment/quantum meruit (Count IV).  Defendant moves to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, Defendants' motion is GRANTED-IN-PART and DENIED-IN-PART.

## II.    Legal Standard

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

---

[2]     Plaintiff states that he is owed unpaid bonuses but does not explain how or why he is owed these bonuses.

U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.*   "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."   *Id.*

"When reviewing a motion to dismiss, all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom."   *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (internal quotation marks omitted).   The Court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Iqbal*, 556 U.S. at 678.   Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."   *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## III.   Analysis

### A.  Statute of Limitations

Defendants argue that each of Plaintiff's claims is barred in whole or in part by the applicable six-year statute of limitations under New Jersey law.[3]   (D.E. No. 43 ("Def. Mov. Br.") at 7–11).   Plaintiff argues that Defendants' theory is flawed because they use the wrong date for accrual of his claims.   (D.E. No. 47 ("Pl. Opp. Br.") at 5–10).

---

[3]       Defendants do not dispute that New Jersey law governs the Sales Incentive Plan.   (Def. Mov. Br. at 3). However, Defendants state that Plaintiff alleges for the first time in the Second Amended Complaint that his claim for breach of contract arises under the Sales Incentive Plan, rather than the consulting agreement, which applies Argentina law.   (Def. Mov. Br. at 7–8).   Defendants argue that this contradicts Plaintiff's interrogatory responses and deposition testimony.   (*Id.*).   But Defendants do not argue for dismissal based on this contradiction, nor could they; by Defendants' own admission, such evidence obtained through discovery is not properly considered at the motion to dismiss stage.   (D.E. No. 48 ("Def. Reply Br.") at 5 n.3).

"Technically, the Federal Rules of Civil Procedure require a defendant to plead an affirmative defense, like a statute of limitations defense, in the answer, not in a motion to dismiss." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).  The Third Circuit allows a statute of limitation defense "to be raised by a motion under Rule 12(b)(6) only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."  *Id.* (internal quotation marks omitted).  "What all this means is that the statute of limitations will support dismissal under Rule 12(b)(6) only in the very clear case where a plaintiff has pled itself out of court."  *Allegheny Plant Servs., Inc. v. Carolina Cas. Ins. Co.*, No. 14-4265, 2017 WL 3234379, at *4 (D.N.J. July 28, 2017).  Governed by these standards for evaluating a statute of limitations defense at the motion to dismiss stage, the Court concludes that the claims are not "very clear[ly]" time-barred.  *Id.*

To start, the parties agree that Plaintiff's claims accrued once he had an enforceable right to recover the sums he claims are due; however, the parties dispute when the incentive payments were due, and each side pulls from different language in the Sales Incentive Plan for support.  (Def. Mov. Br. at 7–11; Pl. Opp. Br. at 5–10).  The Sales Incentive Plan provides that payments of any incentives and bonuses were to be made "45 days after the close of any month or quarter for Bookings . . . in that period."  (D.E. No. 40-2, Exhibit B, Sales Incentive Plan § 6.1).  A "Booking" is "an Order which complies with the requirements of The NICE Global Bookings Policy and has been approved by the Regional VP, Finance."  (*Id.* § 3.4).  And the Regional VP of Finance has "full discretion to hold back any payment order for further inquiries before it is considered a Booking."  (*Id.* § 6.4).  The Sales Incentive Plan also states that the "Participant should refer to their goal sheet to determine payment schedule and frequency"; Plaintiff's 2011 goal sheet provides for monthly payments.  (*Id.* § 6.1).  Finally, the Sales Incentive Plan states that Defendants

have until 30 days after a plan participant is terminated without cause to pay him or her any commissions owed.  (*Id.* § 11.4.1.2).

Here, the original complaint was filed on December 28, 2017, and thus any cause of action that accrued before December 28, 2011, is time-barred.  Defendant argues that "under the most generous reading of the SAC, Plaintiff can only pursue claims for commissions/bonuses that accrued based on "Bookings" *after* November 1, 2011, as any commissions or bonuses earned *prior* to that month would have been due, at the latest, within 45 days after October 31, 2011 (or by December 15, 2011), and are therefore barred by the applicable statute of limitations.  (Def. Mov. Br. at 9–10).  In response, Plaintiff argues that Defendants' argument improperly renders the Sales Incentive Plan an installment contract, and that Defendants rely on the wrong language in the Sales Incentive Plan to determine the accrual date for Plaintiff's claims.  (Pl. Opp. Br. at 5– 10).  Instead, relying on Section 11.4.1.2 of the Sales Incentive Plan, Plaintiff argues that the statute of limitations did not begin to run until thirty days after Plaintiff was terminated from his employment without cause (or January 31, 2012).  (Pl. Opp. Br. at 6–8).

After a thorough review of the Second Amended Complaint, the Court is unable to definitively conclude that Plaintiff's claims are time-barred.  Specifically, the Court is unable to conclude when exactly the Hercules Project was "booked,"[4] when payments were due to Plaintiff for the Hercules Project pursuant to Section 3.4 of the Sales Incentive Plan, and how, if at all, Sections 6.4 and 11.4.1.2 of the Sales Incentive Plan affected Plaintiff's incentive payments due pursuant to the Hercules Project.  The answers to these questions may require the Court to construe ambiguities in the governing contract, and/or to consider evidence obtained through discovery — tasks that the Court cannot engage in at the motion to dismiss stage.  *See*, *e.g.*, *Mercedes-Benz*

---

[4]     The Second Amended Complaint generally refers to the Hercules Project being consummated in 2011, but there is no indication as to when the project was "booked."  (*See* SAC ¶¶ 8, 12 & 15).

*USA, LLC v. ATX Group, Inc.*, No. 08-3529, 2009 WL 2255727, at *8 (D.N.J. July 27, 2009) (explaining that where "[t]he parties' competing interpretations reveal an ambiguity," then "plaintiff's reasonable interpretation of the contract is sufficient to overcome defendant's motion to dismiss and to permit this case to proceed to discovery on the breach of contract claims"). Thus, because it is not "very clear" on the face of the Second Amended Complaint that Plaintiff's claims are time-barred, the Court must deny Defendants' motion to dismiss on statute of limitations grounds. *Allegheny Plant Servs.*, 2017 WL 3234379, at *4. However, Defendants are free to raise their statute of limitations argument as an affirmative defense at a later stage in the litigation.

### B.  Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendants next argue that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing must be dismissed because it is duplicative of the breach of contract claim. (Def. Mov. Br. at 11).  The Court agrees.

"Where a party has breached a specific term of a contract, that party cannot be found separately liable for breaching the implied covenant of good faith and fair dealing when the two asserted breaches basically rest on the same conduct." *Spellman v. Express Dynamics, LLC*, 150 F. Supp. 3d 378, 379 (D.N.J. 2015) (internal quotation marks omitted).  Thus, although Federal Rule of Civil Procedure 8(d) permits a party to plead multiple claims alternatively or hypothetically, "where it is undisputed that a valid and unrescinded contract governs the conduct at issue, breach of implied duty claims can be dismissed at the motion to dismiss stage." *Id.* at 390.

In the instant case, Plaintiff alleges that "[t]he parties agreed that Plaintiff would be compensated based on the performance of the PS, NV, and SMS [p]roduct [l]ines," and that Defendants "misrepresented to the Plaintiff that the success of the Hercules [Project] was not 100%

attributable to the performance of the PS, NV, and SMS [p]roduct [l]ines and compensated him at an arbitrary, discounted rate." (SAC ¶¶ 31–34). In other words, Defendants paid Plaintiff an amount that was contrary to what was provided for in the parties' agreement. Plaintiff also alleges that Defendants "acted in bad faith to deprive the Plaintiff of the benefit of the bargain between the parties." (*Id.* ¶ 35). However, such "[a] conclusory statement that a breach of contract is done in bad faith is insufficient to state a [separate] claim for breach of the implied covenant of good faith." *Cedar Holdings, LLC v. Menashe*, No. 16-7152, 2017 WL 1349321, at *3 (D.N.J. Apr. 7, 2017). Without more, this claim is duplicative of Plaintiff's breach of contract claims and must be dismissed. *Id.* (dismissing a duplicative claim for breach of the implied covenant of good faith and fair dealing).

### C. Conversion

Similarly, Defendant argues that Plaintiff's conversion claim should be dismissed because Plaintiff "merely alleges that Defendants owe him money pursuant to a contractual relationship." (Def. Mov. Br. at 14). The Court agrees with Defendants.

In New Jersey, a conversion claim "will not lie in the context of a mere debt." *Advanced Enterprises Recycling, Inc. v. Bercaw*, 869 A.2d 468, 472 (N.J. Super. Ct. App. Div. 2005). Rather, "[t]he plaintiff must show that the money in question was identifiably the plaintiff's property or that the defendant was obligated to segregate such money for the plaintiff's benefit." *Scholes Elec. & Commc'ns., Inc. v. Fraser,* No. 04–3898, 2006 WL 1644920, at *5 (D.N.J. Jun. 14, 2006). "Because a monetary loss can be repaid in whole by other money, allegedly converted money is deemed a mere debt unless there is a requirement that the 'identical money' be repaid." *Am. Rubber & Metal Hose Co. v. Strahman Valves, Inc.*, No. 11-1279, 2011 WL 3022243, at *7 (D.N.J. July 22, 2011). Further, "New Jersey courts have expressly restricted application of the doctrine

of conversion when it seeks to turn a claim based on breach of contract into a tort claim." *D & D Tech., Inc. v. CytoCore, Inc.*, No. 14-4217, 2014 WL 4367314, at \*4 (D.N.J. Sept. 2, 2014).

Here, Plaintiff's conversion claim is simply a restatement of Plaintiff's claim for money owed pursuant to the contract at issue.  In Count III, Plaintiff alleges that he "is lawfully entitled to the commissions and bonuses that he earned during his performance of work for the Defendants," and by "refusing to pay the Plaintiff for the work he performed, Defendants have converted and deprived the Plaintiff of the assets to which he was lawfully entitled."  (SAC ¶¶ 38– 39).  These allegations, which essentially allege that Defendants "converted" money owed to Plaintiff pursuant to the Sales Incentive Plan, simply cannot support a claim for conversion, and Count III must be dismissed.[5]  *D & D Tech.*, 2014 WL 4367314, at \*4 (dismissing conversion claim where Plaintiff alleged that Defendant failed to properly compensate Plaintiff for services rendered pursuant to a contract).

### D.  Unjust Enrichment

Finally, Defendants argue that Plaintiff's unjust enrichment claim fails because he acknowledges that the parties were in a relationship governed by a contract.  (Def. Mov. Br. at 14– 15).  Plaintiff argues that case law supports pleading these claims in the alternative.  (Pl. Opp. Br. at 13).  Once again, the Court agrees with Defendants.

Recovery for unjust enrichment cannot exist when there is an enforceable agreement among parties.  *Hatteras Press, Inc. v. Avanti Computer Sys. Ltd.*, No. 16-5420, 2017 WL

---

[5]      Notably, Plaintiff does not directly respond to Defendants' arguments regarding the conversion claim. Plaintiff makes a blanket statement that alternative pleading is permissible, but the only cases cited in support of that proposition dealt with alternative unjust enrichment claims, not conversion claims.  (Pl. Opp. Br. at 13–14 (citing *Simonson v. Hertz Corp.*, No. 10-1585, 2011 WL 1205584, at \*1 (D.N.J. Mar. 28, 2011); *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 736 (D.N.J. 2008))).  Moreover, Plaintiff argues that Defendants' "attempt to misclassify the work performed by the Plaintiff as 'S2' in a vain effort to sidestep the compensation to which the Plaintiff is entitled and keep the Plaintiff's commissions for themselves, supports a claim for conversion separate from the Plaintiff's breach of contract claim." (*Id.* at 14.).  The Court is not certain that such an allegation supports a claim for conversion, but in any event, that allegation does not appear in the Second Amended Complaint.

2838349, at *5 (D.N.J. June 30, 2017).  Although Plaintiff "is entitled to plead in the alternative, *see* Fed. R. Civ. P. 8(d)(2), absent a claim that the Agreement is invalid or that [Plaintiff] performed work beyond that covered by the Agreement, it cannot sustain claims founded on quasi-contractual theories."  *Freightmaster USA, LLC v. Fedex, Inc.*, No. 14-3229, 2015 WL 1472665, at *6 (D.N.J. Mar. 31, 2015).

Here, Plaintiff's unjust enrichment claim is based on the same conduct underlying his breach of contract claim, and there is no allegation that the contract is invalid.  Specifically, Plaintiff alleges that by facilitating the Hercules Project, Plaintiff conferred a benefit on Defendants "with the reasonable expectation that he would be compensated in accordance with the Sales Incentive Plan and [g]oal [s]heet, and that he would be paid any bonuses he earned in accordance with [Defendants'] compensation policies." (SAC ¶¶ 42–43).  Plaintiff seemingly does not dispute that the claims are duplicative of one another but insists that dismissal at this stage would be premature.  (Pl. Opp. Br. at 14).  But because there is no allegation or argument that the governing contract is invalid, or that Plaintiff performed work outside the scope of the contract, the Court does not agree.  *See, e.g.*, *Freightmaster USA*, 2015 WL 1472665, at *6 (explaining that quasi-contractual theories cannot be pleaded in the alternative "absent a claim that the contract is invalid."); *Premier Pork L.L.C. v. Westin, Inc.*, No. 07-1661, 2008 WL 724352, at *14 (D.N.J. Mar. 17, 2008) (dismissing unjust enrichment claim where "it [wa]s clear that Plaintiff's unjust enrichment claim . . . relate[d] to the exact same subject matter as the sales agreements at issue in [the] breach of contract claim"); *Am. Rubber & Metal Hose*, 2011 WL 3022243, at *7 (dismissing unjust enrichment claim where is was based on the alleged agreements at issue). [6]  Accordingly,

---

[6]        The cases Plaintiff cites for his alternative pleading theory are distinguishable from the present case.  *See Simonson*, 2011 WL 1205584, at *7 (denying defendant's motion to dismiss plaintiff's unjust enrichment claim where the terms of the contract were in dispute); *MK Strategies*, 567 F. Supp. 2d at 735 (denying defendant's motion to

the Court will also dismiss Count IV of the Second Amended Complaint.

**IV.      Conclusion**

Based on the foregoing, Defendants' motion to dismiss is GRANTED-IN-PART and DENIED-IN-PART.  An appropriate Order accompanies this Opinion.


s/ *Esther Salas*
**Esther Salas, U.S.D.J.**

---

dismiss plaintiff's unjust enrichment claim where the alleged unlawful benefit was "outside the scope of the main contract").